UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THEODORE R. MOLINE,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF CASTLE ROCK, CASTLE ROCK POLICE DEPARTMENT; CASTLE ROCK FIRE & EMS; ROBERT HEUER, individually and in his capacity as police chief for City of Castle Rock; BRANDON McNEW, individually and in his capacity as a police officer for the Castle Rock Police Department; JAMES QUEEN, individually and in his capacity as a reserve officer for Castle Rock Police Department; ERIC KOREIS, individually and in his capacity as chief of Castle Rock Fire & EMS; KYLE McCOY, individually and in his capacity as captain for the Castle Rock Fire & EMS,<br><br>    Defendants. | Case No. C04-5704FDB<br><br>ORDER GRANTING DEFENDANTS McNEW, QUEEN, and McCOY'S MOTION FOR SUMMARY JUDGMENT |

## INTRODUCTION

This cause of action arises out of an event on August 1, 2003 when Defendants Officers Branden McNew and James Queen responded to a 911 report of a possible assault in progress at an address in the City of Castle Rock. Plaintiff had been pushed into an approximately 8-feet deep hole,

ORDER - 1

landed with his chest on a stake sticking up at the bottom of the hole, and sustained an injury to his chest.  Plaintiff Moline had informed the officers that he had had a physical altercation with another man on who was still on his property.  To the officers, Moline appeared to be intoxicated (slurred speech, unbalanced, repetitive statements), and was drinking beer when they arrived on the scene.  Moline contends that the officers did no sobriety testing and could have no basis to determine his level of intoxication.  The officers observed a large, red abrasion on Moline's chest, which appeared to be caved in as well, and they were concerned that Moline had a serious chest injury and did not realize it because of his level of intoxication.   Moline pointed out Tobbie Cook to the officers as the one who pushed him causing him to fall into the hole.  When the sirens were heard from the approaching medical aid unit, Moline contends that he announced that the officers, McNew, Queen and all the paramedics were not welcome on his property and that they were all trespassing.

When Captain Kyle McCoy, paramedic, arrived and observed Moline, he was concerned that he had a serious chest injury resulting from broken ribs, as well as a possible head injury, and he agreed with the officers that Moline required immediate medical attention and that Moline was unable to make appropriate decisions regarding his care due to his intoxication and/or injury.

Moline refused to answer questions and began to walk toward the front door of his house, where Officer McNew was standing in Moline's path.  As Moline refused to obey Officer McNew's commands, Moline contends that he raised his right hand in the air with an open palm.  Officer McNew believed that Moline was about to strike him and moved out of the way, and Officer Queen came to McNew's aid.  Moline was then taken down to the ground and the officers were struggling to handcuff Moline.  During this time, Officer McNew was struck in the face.  The officers contend that Moline continued to resist and was yelling profanity at them.  Officer McNew then threatened and ultimately used OC spray on Moline.  Moline was then handcuffed. Moline was then transported to St. John's Medical Center Emergency Room, and was medically cleared and released in about one hour.  Moline was charged with assault in the third degree for hitting Officer McNew.  The matter

ORDER - 2

proceeded to a jury trial in May 2004 where Moline was acquitted.  This cause of action was commenced in October 2004.

Defendants McNew, Queen, and McCoy move for summary judgment based on qualified immunity.  Moline contends that the paramedics were not welcome on his property and neither were the officers who were pressing the issue.  Moline that the officers beat him on his back and shoulder area and that they excessively sprayed his with OC.  Moline contends that there are material facts in dispute and that constitutional violations have been established.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if  the moving party establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial.  *Celotex Corp. v.  Catrett*, 477 U.S. 317, 322-323 (1986).  Inferences drawn from the facts are viewed in favor of the non-moving party.  *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

Summary judgment is proper if a defendant shows that there is no evidence supporting an element essential to a plaintiff's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).   Failure of proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can exist and summary judgment is mandated.  *Celotex*, 477 U.S. 317, 322-23 (1986).  The nonmoving party "must do more than show there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

**A.  Civil Rights Claims Barred by Qualified Immunity**

In beginning analysis of this issue, the first step is to determine: "[B]ased upon the facts taken in the light most favorable to the party asserting the injury, did the officer's conduct violate a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194 (2001).  If there was a constitutional violation,

ORDER - 3

the question is "whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." *Id.* 201-05.

Defendants argue that a Washington statute authorizes taking intoxicated persons into protective custody; moreover, once Moline was taken into custody from a crime (assault of a police officer), Defendants had a duty to render medical aid.

Police may respond to emergencies under the community caretaking function. *Mincey v. Arizona,* 437 U.S. 385, 392 (1978). A competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment. U.S. Const., Amend. 14; *Cruzan v. Director, Missouri Dept. Of Health*, 497 U.S. 261 (1990). The right is not absolute, for the state has an interest in protecting the sanctity of the lives of its citizens. *In re Colyer*, 99 Wash. 2d 114 (1983). This limitation is reflected in Washington's informed consent statute, RCW 7.70.050(4) where consent may be implied where a "recognized health care emergency exists and the patient is not legally competent to give informed consent and/or a person legally authorized to consent on behalf of the patient is not readily available." For purposes of giving informed consent, an "incompetent" person includes a person incompetent, by reason of mental illness, habitual drunkenness, excessive use of drugs, or other mental incapacity, of either managing his or her property, caring for himself or herself, or both. RCW 7.70.050 and 7.70.065. A person need not be declared legally incompetent to be incompetent to make health care decisions. *See Morinaga v. Vue*, 85 Wn. App. 822, 829-830, 935 P2d 637 (1977)("incompetent" due to disability, although not declared "legally" incompetent.).

Moreover, RCW 70.96A.120 authorizes officials to take into protective custody persons who appear to be incapacitated or gravely disabled by alcohol or drugs and authorizes police to use force if necessary:

> (2) ... a person who appears to be <u>incapacitated or gravely disabled by alcohol</u> or other drugs and who is in a public place or who has threatened, attempted, or inflicted physical harm on himself, herself, or another, <u>shall be taken into protective custody by a peace officer</u> ..., but in no event beyond eight hours brought to an approved treatment program for treatment .... The peace officer ..., in detaining the person and

ORDER - 4

>in taking him or her to an approved treatment program, is taking him or her into protective custody and shall make every reasonable effort to protect his or her safety. In taking the person into protective custody <u>the detaining peace officer ... may take reasonable steps including reasonable force if necessary to protect himself or herself or effect the custody.</u> A taking into protective custody under this section is not an arrest....

(Emphasis added.) "Gravely disabled by alcohol or other psychoactive chemicals" or "gravely disabled" means that a person (a) is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety;...." RCW 70.96A.020(12) Other provisions in the statute go on to define "incapacitated by alcohol or other psychoactive chemicals," "Intoxicated person," "likelihood of serious harm", and "treatment." Police officers have a duty to summon medical aid for individuals in their custody, including pre-trial detainees, pursuant to due process. *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986).

Moline argues that an unlawful seizure occurred when Officer McNew stood in front of Molines home and prevented him from entering, and the seizure continued when Officer McNew grabbed hold of Moline, and Officers McNew, Queen and Captin McCoy exceeded their authority under the community caretaking function by forcing Moline to the ground and demanding that he be taken to a medical center for treatment. Moline contends that the police should have left once they arrested Cook for the assault on Moline. Moline argues that he was denied due process when the officers and paramedics arbitrarily determined that he was incompetent to determine his need for medical treatment, particularly since they found Moline competent enough to report Cook's assault. Moline disputes a conclusion that he was "gravely disabled" because there is no evidence concerning Moline's level of intoxication, nor is there any proof that he was mentally ill. The officers at the scene all stated to a private investigator that Moline was not suicidal, was oriented with place, space and time, was ambulatory and was able to breathe on his own and was, therefore, not "gravely disabled." Moline argues that there was no basis that Defendants could reasonably have believed that their actions were lawful.

ORDER - 5

Moline does not dispute that he had been drinking, declarations submitted with Defendants' motion support the assertion that Moline had been drinking and was drinking when first contacted in front of his residence (odor of intoxicants, staggering, slurred speech).  (Decls. of Queen, Foster, McCoy, and Schuller).  It is not disputed that he had an injury to his chest.  The circumstances reasonably raised a concern in the Officers for Moline's health: his intoxication and the injury to his chest.  Under the community caretaking function, the officers may use force in their effort to give aid to a person, and under the circumstances of this case, the Officers' efforts were reasonable.  Furthermore, once Moline was taken into custody for the assault on McNew, the constitution required Defendants to get medical aid for Moline.

Under the circumstances presented, the Defendants did not violate Moline's constitutional rights, but Defendants are entitled to qualified immunity even if they mistakenly but reasonably believed that their conduct did not violate a clearly established constitutional right.  Moline submits no evidence to support a claim of retaliation, and submits not argument or authority on any of his state law claims.

Defendants McNew, Queen, and McCoy are entitled to qualified immunity and to summary judgment dismissing Plaintiff Moline's claims against them.

NOW, THEREFORE, IT IS ORDERED: The Motion of Defendants Brandon McNew, James Queen, and Kyle McCoy for Summary Judgment [Dkt. # 14] is GRANTED, and Plaintiff's claims against them are DISMISSED with prejudice.

DATED this 14th day of December, 2005.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 6